IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARTA DAVILA TORRES,

Plaintiff,

v.

INDUSTRIAL COMMISSION OF PUERTO
RICO, et als,

Defendants.

Civil No. 05-1202 (HL)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Marta Dávila Torres filed this action seeking damages against the Industrial Commission of Puerto Rico ("Commission"), Gilberto Charriez Rosario ("Charriez"), President of the Commission, and Guillermo Rivera Bermúdez ("Rivera"), Human Resources Director of the Commission, pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983, to seek redress for defendants' violations of her rights under the First, Fifth and Fourteenth Amendment of the United States Constitution. Pendent supplemental jurisdiction under the laws of the Commonwealth of Puerto Rico are premised on the same alleged actions, to wit; Article II, Sections 1, 4, 6 and 7 of the Constitution of the Commonwealth of Puerto Rico and Articles 1802 of the P.R. Civil Code, 31 L.P.R.A. §5141. (Docket No. 1).

The Commission, Charriez and Rivera filed a Motion to Dismiss plaintiff's cause of action under the following grounds: a) plaintiff's claims for monetary damages under § 1983 against the co-defendants in their official capacities are barred under the Eleventh Amendment; b) for

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 2

failure to state a claim upon which relief could be granted as to §1983 for failure to allege a

political discrimination, retaliation and constructive discharge claim; c) entitlement of co-

defendants, in their individual capacities, to qualified immunity; and d) pendent state claims

must also be dismissed.  (Docket No. 12).

　　　Plaintiff has duly opposed the Motion to Dismiss claiming the grounds for dismissal are

without merit.  (Docket No. 15).

　　　On September 21, 2005, the Motion to Dismiss was referred to this Magistrate Judge for

report and recommendation.  (Docket No. 18).

## MOTION TO DISMISS AND STANDARD UNDER RULE 12(B)(6).

　　　Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response

to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon

which relief can be granted.  Still, "a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99,

102 (1957); *see* Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir.1991).

　　　The Court must accept as true "all well-pleaded factual averments and indulg[e] all

reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

A complaint must set forth "factual allegations, either direct or inferential, regarding each

material element necessary to sustain recovery under some actionable theory." Romero-Barceló

v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp.,

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 3

_____

851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss.  Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

Indeed, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations."  González-Pérez v. Hospital Interamericano De Medicina Avanzada, 355 F.3d 1, 5 (1st Cir .2004).

## FACTUAL BACKGROUND

On April 23, 2003, co-defendant Charriez appointed plaintiff to the position of Director of Human Resources of the Industrial Commission, a position of trust to the President of the Commission.  Plaintiff earned $4,600.00 monthly, plus considerable benefits afforded to employees of the Commission.

Before plaintiff's appointment at the Commission as Director of Human Resources, she had been earning $3,130.00 (plus a $699 differential due to difficulty in recruitment) in a career position of Assistant Director in the Human Resources Department of the Metropolitan Bus Authority ("AMA").

After occupying her position at the Commission until early August 2003, plaintiff was ordered by Charriez, member of the Popular Democratic Party ("PPD"), to execute adverse employment personnel actions against employees of the Commission identified with the New Progressive Party ("NPP"), opposition party supporters.  Plaintiff is herself a member of the

PPD.  Plaintiff warned Charriez of the illegality of his order and she refused to follow them. When plaintiff refused to abide by the orders of Charriez, he expressed dissatisfaction and began to ignore her presence, refused to greet her and excluded her from staff meetings.

On August 4, 2003, plaintiff requested a transfer back to an equal or similar career position with the Commission, as the one she formerly held at the AMA.

On August 20, 2003, Charriez transferred plaintiff to the career position of Officer to the Human Resources Programs I with a salary of $3,230.00.    Plaintiff was not granted the $699.00 statutory differential that she had been granted since 1992.

On or about September 1, 2003, co-defendant Rivera, plaintiff's new immediate supervisor and a PPD follower, made her spend seven and a half hours daily with no duties assigned. Co-defendant Rivera constantly ignored plaintiff's presence and disregarded her complaints, stripped her of her regular duties and excluded her from staff meetings.

On October 20, 2003, plaintiff was diagnosed with depression and insomnia, conditions she had never suffered before.

On November 10, 2003, after plaintiff returned from sick leave, she discovered the drawers in her desk and bookcase had been forced and broken without any previous request or notice, pursuant to the orders of co-defendant Rivera.

On February 19, 2004, plaintiff had no choice but to tender her resignation.

## ANALYSIS

### I.    Eleventh Amendment Immunity.

In the Motion to Dismiss, the Commission and co-defendants Charriez and Rivera allege that plaintiff's claims for monetary damages under § 1983 against them in their official capacities are barred under the Eleventh Amendment to the United States Constitution.  In essence, co-defendants contend the Commission is an instrumentality of the Commonwealth of Puerto Rico, and as such, co-defendants are entitled to Eleventh Amendment immunity.  Plaintiff has duly opposed this allegation.

The Eleventh Amendment proscribes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." 1 U.S.C. Const. Amend. XI.

The Eleventh Amendment bars suits from being brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to being sued.  The Eleventh Amendment has also been interpreted to bar suits for monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099 (1985); Culebras Enterprises Corp. v. Rivera Ríos, 813 F. 2d 506, 516 (1st Cir. 1987).

It has already been determined that the Commonwealth of Puerto Rico is considered a state for purposes of the Eleventh Amendment.  Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct

& Sewer Authority, 991 F. 2d 935, 939 n.3 (1ˢᵗ Cir. 1993); De León López v. Corporación Insular de Seguros, 931 F. 2d 116, 121 (1ˢᵗ Cir. 1991); Puerto Rico Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, 9 (1st Cir. 1990).[1]

Eleventh Amendment immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1ˢᵗ Cir.1987); see Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568 (1977); Sánchez-López v. Fuentes Pujols, 247 F. Supp. 2d 37 (D. Puerto Rico 2002).

"The [Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky, 473 U.S. at 169. The test for finding that a state has waived its Eleventh Amendment immunity is a stringent one. Acevedo López v. Police Dept. of Com. of Puerto Rico, 247 F.3d 26, 28 (1ˢᵗ Cir. 2001); see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142 (1985). A state's consent to suit in the federal courts must be "unequivocally expressed."

---

[1]   Over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. See, e.g., Negrón Gaztambide v. Hernández Torres, 145 F.3d 410 (1ˢᵗ Cir.1998); Metcalf, 991 F.2d 935, 939 n. 3 (1ˢᵗ Cir.1993); Aviles-Martínez v. Monroig, 963 F.2d 2, 8 (1ˢᵗ Cir.1992); De León López, 931 F.2d 116, 121 (1ˢᵗ Cir.1991); Culebras, 813 F.2d at 516; Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034 (1ˢᵗ Cir.1987); Fernández v. Chardón, 681 F.2d 42, 59 n. 13 (1ˢᵗ Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 776 n. 7 (1ˢᵗ Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); Litton Indus., Inc. v. Colón, 587 F.2d 70 (1ˢᵗ Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900 (1984).   It must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347 (1974). Furthermore, "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court." Atascadero, 473 U.S. at 241; Acevedo López, 247 F.2d at 28.

Whether a local entity, or public official, " 'is to be treated as an arm of the state partaking of the State Eleventh Amendment Immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend . . . depends, at least in part, upon the nature of the entity created by state law.' " Culebras, 813 F.2d at 516-17.   It has been held that the factors to consider are: (1) whether it performs a governmental function, (2) to what extent it is financed independently of the state treasury, (3) whether it functions with substantial autonomy, (4) and if a judgment sought to be entered against the agency will be satisfied out of the state treasury. Id. at 517; Buck v. Puerto Rico Symphony Orchestra Corp., 849 F.Supp. 141, 144 (D. Puerto Rico 1994); Suárez Cestero v. Pagán Rosa, 996 F.Supp. 133, 142 (D. Puerto Rico 1998).

Accordingly, the Eleventh Amendment bars suits against the Commonwealth of Puerto Rico and against state officials acting in an official capacity.   However, state officials, such as co-defendants Charriez and Rivera, can still be sued in their personal capacity. See Bernier-

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 8

---

Aponte v. Izquierdo Encarnación, 196 F.Supp.2d 93, 101 (D. Puerto Rico 2002); Vega Castro v. Puerto Rico, 43 F.Supp.2d 186, 189 (D. Puerto Rico 1999), aff'g 214 F.3d 34 (1st Cir. 2000).

As co-defendants Charriez and Rivera were acting as officers of the Commission, to decide whether the complaint against them in their official capacity must be dismissed, the Court must first determine whether the Commission enjoys Eleventh Amendment immunity.

It has been previously held in this District that the Industrial Commission is an agency of the Commonwealth with quasi-judicial functions, created pursuant to the Compensation System for Work-Related Accident Act, Law No. 45 of April 18, 1935, as amended, P.R. Laws Ann. tit 11 § 8(b) (1997), see e.g. Agosto Serrano v. F.S.E., 132 D.P.R. 866, 875 (1993). Vicenty Martell v. Commonwealth of Puerto Rico, 48 F.Supp. 2d 81, 92 (D.P.R. 1999). Thus, the Commission enjoys Eleventh Amendment immunity. Id.

There are of course exceptions to above discussed rule. Specifically, the Eleventh Amendment protection does not apply in four (4) circumstances: a state may consent to be sued in federal forum; a state may waive its own immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow, other constitutional imperatives may take precedence over the Eleventh Amendment's bar. Metcalf, 991 F. 2d at 938; Bernier-Aponte, 196 F.Supp.2d at 98.

Notwithstanding the above discussed, in 1972 Congress amended the Civil Rights Act of 1964 to include public employees, clearing the way for the prosecution of private rights of action against States that practiced discrimination, but limiting remedies to those equitable in

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 9

nature.  In 1991 Congress added compensatory damages.  *See* Civil Rights Act of 1991, Pub.

L. No. 102-166, 105 Stat. 1071, 1072 (1991) (codified in 42 U.S.C. §1981a(a)(1).  Thus,

Congress has expressly waived the immunity of the State in cases like this one where a state

government is sued for certain actions of employment discrimination.  Espinal Domínguez v.

Commonwealth of Puerto Rico, 352 F.3d 490 (1st Cir. 2003).

Additionally, consideration should be given to the interpretation in Fitzpatrick v. Bitzer,

427 U.S. 445, 96 S.Ct. 2666 (1976) (*concluding* that Title VII's authorization of federal-court

jurisdiction to award money damages against a state government to individuals subjected to

employment discrimination does not violate the Eleventh Amendment since Congress was

exercising its § 5 remedial powers).  It follows that the substantive provisions of the Fourteenth

Amendment themselves offer a powerful reason to provide a federal forum.  Idaho v. Coeur

d'Alene Tribe of Idaho,  521 U.S. 261, 279, 117 S.Ct. 2028,  2039 (1997).  *See also* Espinal

Dominguez v. Commonwealth of Puerto Rico, *supra* (*discussing* aspects of Title VII and the

Eleventh Amendment as to the Commonwealth of Puerto Rico).

Therefore, plaintiff's claim against the Commission, and co-defendants Charriez and

Rivera, in their official capacities, are insupportable as a matter of law and should be dismissed

accordingly.

Consequently, it is recommended that co-defendants' Motion to Dismiss all of plaintiff's

claims for monetary damages under § 1983 against the Commission and co-defendants

Charriez and Rivera, in their official capacities, on Eleventh Amendment grounds BE

GRANTED.

## II. Failure to State a Claim under § 1983.

### 1.    Standard for a § 1983 claim.

Section 1983 of Title 42 of the United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress....

In order to establish a prima facie claim under § 1983, the complaining party must allege

that: (1) the conduct complained of was committed by a person acting under color of state law;

and (2) this conduct constitutes a deprivation of a constitutional right or a federal statutory right.

*See* Parratt v. Taylor, 451 U.S. 527, 536, 101 S.Ct. 1908 (1981), overruled on other grounds

by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662; Martínez-Rodríguez v.

Colón-Pizarro, 54 F.3d 980 (1st Cir. 1995); Martínez-Vélez v. Simonet, 919 F.2d 808, 810 (1st

Cir. 1990); Vicenty Martell, 48 F.Supp.2d at 89.

This second prong has two aspects: (1) there must have been an actual deprivation of

the plaintiff's federally protected rights; and (2) there must have been a causal connection

between the defendant's conduct and the deprivation of the plaintiff's federal rights.

Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Voutour v. Vitale, 761

F.2d 812, 819 (1st Cir. 1985).

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 11

In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018 (1978); Gutiérrez-Rodriguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989); and (2) that the defendant's conduct was intentional, Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See* Gutiérrez-Rodríguez, 882 F.2d at 562.

### 2.    Analysis.

Co-defendants Charriez and Rivera claim plaintiff has failed to state a claim under Fed.R.Civ.P. 12(b)(6) under § 1983, in their individual capacities, for political discrimination, retaliation and constructive discharge.

First, we note that in Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1ST Cir. 2004), the First Circuit did away with the heightened pleading standard for civil right cases following the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).   The First Circuit stated as follows:

> The handwriting is on the wall.  Swierkiewicz has sounded the death knell for the imposition of a heightened pleading standard except in civil cases in which either a federal statute or a specific Civil Rule requires that result.  In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply notice pleading requirements of Rule 8(a)(2).  Educadores, 367 F.3d at 66.

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 12

Accordingly, a Complaint need only include "a short plain statement of the claim showing the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

In civil rights actions, "a court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " Educadores, 367 F.3d at 66 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984)).

Thus, at this juncture, all plaintiff needs to do is include in the complaint "a short plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

Plaintiffs' complaint, while it may not serve as a model pleading, states enough facts to survive dismissal under Rule 12(b)(6) for § 1983 claims of discrimination.  Plaintiff alleges that, after occupying her position at the Commission until early August 2003, plaintiff (member of the PPD) was ordered by Charriez (member of the PPD) to execute adverse employment personnel actions against employees of the Commission identified with the NPP.  Plaintiff complained to Charriez verbally and in writing warning him of the illegality of his order and she refused to follow them.  When plaintiff refused to abide by the orders of Charriez, he expressed

dissatisfaction and began to ignore her presence, refused to greet her and excluded her from staff meetings.

On August 4, 2003, plaintiff requested a transfer back to an equal or similar career position with the Commission, as the one she formerly held at the AMA.  On August 20, 2003, Charriez transferred plaintiff to the career position of Officer to the Human Resources Programs I with a salary of $3,230.00.   Plaintiff was not granted the $699.00 statutory differential that she had been granted since 1992.

On or about September 1, 2003, co-defendant Rivera, plaintiff's new immediate supervisor and a PPD follower, made her spend seven and a half hours daily with no duties assigned. Co-defendant Rivera constantly ignored plaintiff's presence and disregarded her complaints, stripped her of her regular duties and excluded her from staff meetings.

On October 20, 2003, plaintiff was diagnosed with depression and insomnia, conditions she had never suffered before.  On November 10, 2003, after plaintiff returned from sick leave, she discovered the drawers in her desk and bookcase had been forced and broken without any previous request or notice, pursuant to the orders of co-defendant Rivera.  On February 19, 2004, plaintiff had no option but to tender her resignation because of the constant harassment and retaliation against her by co-defendants.

Taken the allegations of the complaint as true, plaintiff in this case has met the threshold necessary through the averments of the complaint by the proffered evidence that is crucial to a discrimination case as to which it carries the burden at trial.  The civil rights complaint sets

forth minimal facts, not subjective characterizations, as to who did what to whom and why. Velázquez v. Chardón, 736 F.2d 831 (1st Cir. 1984).   Furthermore, a complaint in an employment discrimination lawsuit under § 1983 need not  contain specific facts establishing a prima facie case of discrimination, but only a short and plain statement of the claim showing the pleader is entitled to relief.   Educadores, 367 F.3d at 61; Swierkiewicz, 534 U.S. at 506.

We note that the fact that plaintiff was from the same political party as the co-defendants does not *ipso facto* and in itself imply that plaintiff has failed to state a claim under Fed.R.Civ.P. 12(b)(6) under § 1983 for political discrimination and violation of her First Amendment rights, as conclusively claimed by the co-defendants. The association's constitutionally protected status is not altered by the fact that a person is a member of the same party as the supervisor in this case.  "Clearly factions within one party can represent different political philosophies.  Thus, the underlying principle, freedom to express political beliefs, is very much still at stake."  Padilla-García v. Rodríguez, 212 F.3d 69, 76 (1st Cir. 2000).[2]  District Courts have recognized situations

---

[2] This is not an entirely new understanding of the Elrod-Branti doctrine. See Vázquez v. López-Rosario, 134 F.3d 28, 32 (1st Cir. 1998) (applying political discrimination analysis to facts arising from primary election); LaRou v. Ridlon, 98 F.3d 659, 661-62 (1st Cir. 1996) (same); Rodríguez Rodríguez v. Muñoz Muñoz, 808 F.2d 138, 140-43 (1st Cir. 1986) (considering applicability to intra-party conflicts). And this view is shared by other courts that have considered the patronage doctrine in the context of primary elections. See Robertson v. Fiore, 62 F.3d 596, 600 (3d Cir.1995) ("The danger that employees will abandon the expression or exercise of their political beliefs to appease their supervisors is not diminished because a supervisor supports a different identifiable faction within a party as compared to a different party altogether."); Tomczak v. City of Chicago, 765 F.2d 633, 640 (7th Cir. 1985) ("[Branti 's] reasoning applies with equal force to patronage dismissals when one faction of a party replaces another faction of the same party, especially in election districts where a primary victory within the dominant party virtually assures victory in the subsequent general election." (citation omitted)); McBee v. Jim Hogg County, 703 F.2d 834, 838 n. 1 (5th Cir.1983) (concluding that Elrod-Branti rationale applies when employment decisions are based upon support and loyalty to individual politician as well as a political party because Supreme Court's disapproval of political patronage extends beyond "opposing political party situations"); see also Joyner v. Lancaster, 553 F.Supp. 809, 817-18 (M.D.N.C.1982) (applying political discrimination analysis to case involving

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 15

in which political motives prompted dismissal even though members of same party. <u>Barnes v.</u>
<u>Bosley</u>, 745 F.2d 501, 506 & n. 2 (8th Cir. 1984).  Moreover, there might be situations in which
a supervisor, of the same political party as plaintiff, may acquire a political discriminatory
animus against plaintiff, if for example plaintiff sympathizes with the position of another
employee of the opposing party.  Hence, the allegations of the complaint as to political
discrimination satisfy the threshold necessary to survive co-defendants' Motion to Dismiss.

Furthermore, plaintiff's allegation that she was forced to resign is enough to establish a
constructive discharge claim at this stage.  "Constructive discharge, like any other discharge, is
an adverse employment action that will support an action for unlawful retaliation." <u>West v.</u>
<u>Marion Merrell Dow, Inc.</u>, 54 F.3d 493, 497 (8th Cir. 1995).

In addition, the other actions taken against plaintiff by the co-defendants (such as being
ignored, stripped of her duties, transfer to another position of lesser pay and not being paid the
$699.00 differential,  and excluded from staff meeting, among others) could be considered
adverse employment actions  if plaintiff shows that the alleged conduct effectuated a "material
change" in the terms of employment.  <u>Jones v. Fitzgerald</u>, 285 F.3d 705, 714 (8th Cir. 2002).

Thus, plaintiff in this case has also provided sufficient allegations to establish, at this stage
of the proceedings, a claim of retaliation in light of the actions which were taken against her as
alleged in the Complaint and the accompanying facts as outlined in plaintiff's Opposition, which
could be considered adverse employment actions, including constructive discharge.

---

fallout from primary election); <u>Ecker v. Cohalan</u>, 542 F.Supp. 896, 898-901 (E.D.N.Y.1982) (same).

In view of the foregoing, there are enough allegations to state a claim for relief for discrimination, retaliation and constructive discharge under § 1983, at this stage of the proceedings. Accordingly, it is recommended that the Motion to Dismiss the § 1983 for political discrimination, retaliation and constructive discharge against co-defendants Charriez and Rivera, in their individual capacities, be DENIED.

## III. Entitlement to Qualified Immunity.

Co-defendants Charriez and Rivera succinctly claim they are entitled to qualified immunity in their individual capacities as to the §1983 claims against them. Co-defendants' argument is limited to a one page argument in their Motion to Dismiss. (Docket No. 12, pp. 19-20).

"Government officials performing discretionary functions generally are shielded from liability for civil damages [under §1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003) (quoting Ryder v. United States, 515 U.S. 177, 185, 115 S.Ct. 2031 (1995)).

Based on Supreme Court precedent, the First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 17

time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue.  Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

The request for immunity must be rejected if there is no issue as to the existence of a particular statutory or constitutional right which a reasonable public official should be aware of. The qualified immunity inquiry must start with the court ascertaining whether or not plaintiff has pled sufficient facts to denote violation of a constitutional right. Santana, 342 F.3d at 23; Concepción v. Zorrilla, 309 F.Supp.2d 201, 213 (D.P.R. 2004).

In essence, co-defendants argue –without more– that the alleged acts against plaintiff are not political discrimination.  In the alternative, they only claim it was not clearly established that a supervisor, from the same political party as plaintiff as alleged by her, who transfers an employee to a career position after the employee herself requests such a transfer and after relinquishing her trust position, would be politically discriminating.  Even though co-defendants Charriez and Rivera make reference in their Motion to Dismiss to the three (3) step analysis applicable to qualified immunity, they totally fail to apply the same to this case.

A review of the Opposition to the Motion to Dismiss does not shed much light either in relation to co-defendants' entitlement to qualified immunity.  Plaintiff, after citing the general standard applicable to qualified immunity, simply indicates that "defendant's acts clearly exhibited prohibited conduct as they knowingly continued to retaliate against plaintiff, fully aware that their actions were unlawful.  It is unquestionable that the contours of the First

Amendment rights were clearly established as a matter of law."  (Docket No. 15, pp. 18-19).

No further argument is made by plaintiff to rebut the alleged entitlement to qualified immunity.

Thus, we consider that both parties have failed to fully address and brief this issue.

Consequently, the record is not ripe for such a determination.  See Valentín Rodríguez v.

Municipality of Barceloneta, 236 F.Supp.2d 189, 195 (D. Puerto Rico 2002) (the District Court

denied, at that stage of the litigation, defendants' request for qualified immunity because the

issue was not fully addressed nor briefed).

Since the Court has not been put in a position to entertain an entitlement to qualified

immunity, the court will not address the merits of this issue at this stage of the proceedings.  This

matter will be more properly raised in summary judgment motions.[3]   Accordingly, it is

recommended the Motion to Dismiss on qualified immunity grounds be DENIED without

prejudice.

## IV. Pendent State Claims.

The co-defendants request that, upon the dismissal of plaintiff's federal claims, any

supplemental claims under state law should be dismissed.

---

[3] The issue of qualified immunity is not ripe for disposition on the defendants' motion to dismiss. In
Harlow v. Fitzgerald, 457 U.S. 800, 818,102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court stated that "[o]n
*summary judgment*, the judge appropriately may determine, not only the currently applicable law, but whether
that law was clearly established at the time the action occurred." 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis
added).  Further evidence in Harlow of the Court's suggestion that the issue of qualified immunity need not be
decided until the summary judgment stage of the proceedings is the Court's language that "judgments surrounding
discretionary action almost inevitably are influenced by the decision maker's experiences, values, and emotions,"
and that "[t]hese variables explain in part why questions of subjective intent so rarely can be decided by *summary
judgment*." Id. at 816 (emphasis added).

Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction.  United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138  (1966); Confederación Laborista De Puerto Rico v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D. Puerto Rico 1985).[4]

In Gibbs, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.  See Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995).

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early

---

[4] See Ponce Federal Bank v. The Vessel "Lady Abby", 980 F. Supp. 56 (1st Cir. 1992) (Nonfederal claim against a person not otherwise a party in a case is sufficiently related to an admiralty claim to permit assertion of pendent party jurisdiction if state law claim against additional party arises out of common nucleus of operative facts with admiralty claim and resolution of factually connected claims in single proceeding would further interests of conserving judicial resources and fairness to parties).

demise of all foundational federal claims." <u>Rodríguez v. Doral Mortage Corp</u>, 57 F.3d 1168, 1177 (1st Cir. 1995); <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 257 (1st Cir. 1996).

The exercise of pendent jurisdiction is discretionary.  In view of the foregoing, all federal claims against co-defendants Charriez and Rivera, in their individual capacities, survive the motion to dismiss.  Thus, upon an assessment of judicial economy and fairness to litigants, the Court should exercise pendent jurisdiction as to plaintiff's Commonwealth claims against the co-defendants.

## CONCLUSION

In view of the foregoing, it is recommended that the Motion to Dismiss all of plaintiff's claims for monetary damages under § 1983 against the Commission and co-defendants Charriez and Rivera, <u>in their official capacities</u> on Eleventh Amendment grounds, BE GRANTED.

In addition, it is recommended that the Motion to Dismiss all of plaintiff's claims for monetary damages under § 1983 for political discrimination, retaliation and constructive discharge against co-defendants Charriez and Rivera<u>, in their individual capacities</u>, for failure to state a claim under Fed.R.Civ.P. 12(b)(6) be DENIED.

Moreover, it is recommended that co-defendant Charriez and Rivera's Motion to Dismiss on grounds of qualified immunity be DENIED without prejudice.

Marta Dávila Torres v. Industrial Commission et als.,
Civil No. 05-1202 (HL)
Report and Recommendation
Page 21

Finally, it is recommended to the Court to exercise of pendent jurisdiction as to plaintiff's Commonwealth claims against the co-defendants.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 19th  day of October 2005.

**s/CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**